UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMES CONNER, | ) |
| | ) |
| Plaintiff, | ) No. 4:16-CV-1539 RLW |
| | ) |
| v. | ) |
| | ) |
| W W INDUSTRIAL CORP., d/b/a SNIPER TREESTANDS, | ) |
| | ) |
| and | ) |
| | ) |
| MENARD, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Exclude Plaintiff's Expert and for Summary Judgment (ECF No. 34). In their Motion, Defendants seek (1) to exclude James Conner's experts Clifford Bigelow and Mark Ezra pursuant to Fed. R. Evid. 702; and (2) for summary judgment under Fed. R. Civ. P. 56. This matter is fully briefed and ready for disposition.

## BACKGROUND

On November 7, 2013, Plaintiff James Conner ("James") purchased two (duplicate) model STLS-40 treestands[1] at Menards in St. Peters, Missouri. (Defendants' Statement of Uncontested Facts ("DSUF"), ¶2). The treestand consists of a "bench platform" and a "ladder" that attaches to the bench platform. The "ladder" consists of three sections; each section contains

---

[1] Throughout both parties' briefing treestands is spelled either as a compound word or as two words. The Court refers to it as a compound word, unless it is quoting from one of the parties' briefs.

four rungs. When assembled, the "ladder" is approximately 12 feet long and the rungs are approximately 12 inches apart. (ECF No. 35 at 1). James did not watch the installation DVD included with the treestand before trying to set it up. (DSUMF, ¶3). On or around November 15, 2013, James assembled the treestand's bench and platform at home. (DSUMF, ¶4). On November 16, 2013, James (5 feet, 11 inches tall; 220-230 pounds) and his son William (12 years old and 160 pounds) transported the treestand to the hunt scene in Oregon County, Missouri. (DSUMF, ¶5). James assembled the three ladder sections of the treestand. (DSUMF, ¶6). James failed to install two sleeves which reinforce the rail joints in the sleeves' correct positions on two parallel rail joints. (DSUMF, ¶7). James also failed to (1) attach the ratchet strap to the bench (which attaches the treestand's bench to the tree); (2) attach the stabilizer bar to a rung of the ladder's middle section; (3) attach the stabilizer straps to the bench; and (4) install the stabilizer bar and straps to the tree and treestand. (DSUMF, ¶8). As James climbed the ladder to secure the bench to the tree, his son acted as the ladder's "stabilizer." While James stood on the ladder, the ladder rails bent at the rail joints between the ladder's lowest section and the ladder's middle section. As he was doing this, James fell and was injured.

Clifford C. Bigelow, P.E.,[2] CFEI,[3] is an expert whose Rule 26 Report claims that the chemistry of the treestand's ladder's rails did not meet proper specifications. (DSUMF, ¶20). Bigelow claims that the accident ladder rails' thickness is less than the Model STLS-40's specification for rail wall thickness.

Mark Ezra, P.E., is an expert who maintains that James's fall was the result of Defendants' failure to instruct/warn James (1) as to the specific middle ladder section rung to which the stabilizer bar should be attached; and (2) that not assembling/erecting the treestand's

---

[2] P.E. stands for Professional Engineer.
[3] CFEI stands for Certified Fire and Explosion Investigator.

stabilizer bar in accord with the instructions would result in injury. (DSUMF, ¶25). Ezra opined that the instruction manual contained misleading diagrams and that the warnings were ambiguous and could mislead the user in interpreting how to assemble the treestand and where to install the stabilizer bar. (ECF No. 41 at 9).

## DISCUSSION

### I.  DAUBERT

#### A. Standard of Review

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court acts as a "gatekeeper" when screening expert testimony for relevance and reliability. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-93 (1993); *Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012). To satisfy the reliability requirement, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). To satisfy the relevance requirement, the proponent must show that the expert's reasoning or methodology was applied properly to the facts at issue. *Id.* A court is entitled to substantial discretion in determining

whether expert testimony should be allowed. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." *Russell*, 702 F.3d at 456-57 (quotation omitted). "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal quotation marks and citation omitted); *see also Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quotation omitted). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Id.* (citation and internal quotation omitted). "'The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury.'" *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 448 (8th Cir. 2008) (quoting *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997)).

## B. Discussion

Defendants assert that the unreliability of the expert testimony of Bigelow and Ezra should result in the exclusion of both pursuant to Fed. R. Evid. 702.

Defendants claim that Bigelow's testimony should be excluded as unreliable. Bigelow attests that the wall thickness of the ladder's rails was below the minimum thickness requirements listed in the steel tube specifications of the quality assurance program. Bigelow contends that a tube with "thinner" wall thickness would have lower bending strength than a "thicker" wall material. Defendants assert that this testimony is unreliable because Bigelow offers no opinion as to the how ladder rail strength was reduced due to the chemistry or rail wall thickness of the accident ladder's rails. Defendants assert that Bigelow performed no tests or calculations to show that there was a percentage reduction of strength in the ladder rail sections from specification and offered no methodology to support his opinion of defect. (ECF No. 35 at

8, 9-10). Defendants state that Bigelow did not conduct any measurements of the ladder rails, but only took a few measurements after the thickness of the rails had been altered.

Likewise, Defendants claim that Ezra's opinions are unreliable and should be excluded. Ezra offers an "alternative warning" theory that contends a different or additional warning would have prevented James's behavior. Ezra further claims that the instruction manual contains diagrams not applicable to the STLS-40 which are ambiguous and misleading, regarding installation of the treestand and stabilizer bar. Specifically, he contends that the warnings/instructions do not inform the user on which rung of the middle section of the ladder the stabilizer was to be installed. (ECF No. 40). In addition, Ezra opines that the design of the treestand "may be considered to be a non-redundant space frame structure made of very thin wall tubing." (ECF No. 40). Therefore, Ezra asserts that no error in manufacture of the treestand or in assembly of the treestand could "be tolerated without incurring a high probability of the buckling collapse of the ladder rails." (ECF No. 40 at 2).

Defendants further argue that Ezra did not test his "alternative warning" to determine whether the additional warning would modify any treestand user's behavior in light of the existing warnings and instructions. (ECF No. 35 at 8, 11). Defendants assert that Ezra's opinion that James's fall is related to the failure to instruct is factually contradicted by James's testimony "since James chose to erect the stand using his experience, instead of following the accident stand's instructions." (ECF No. 35 at 8). Moreover, Defendants claim that Ezra's theory is faulty because "by actual test, all of the rungs of the ladder's middle section properly serve as the stabilizer bar connection, when the bar is attached from a rung to a tree (and tied to tree with the rope)." (ECF No. 35 at 11 (emphasis in original)). Thus, Defendants claim it is "uncontested" that James's fall would not have occurred if James had attached the bar to any

rung of the ladder's middle section and installed the stabilizer straps as instructed. (ECF No. 35 at 11). Because James has failed to show that the warning would have altered his behavior, Defendants argue that this Court should exclude the reports and opinions of Ezra. (ECF No. 35 at 12 (citing *Arnold v. Ingersoll-Rand Co.*, 834 S.W.2d 192, 194 (Mo. 1992) ("plaintiffs must show that a warning would have altered the behavior of the individuals involved in the accident. Missouri, like several other states, aids plaintiffs in proving this second part of causation by presuming that a warning will be heeded")).

Finally, Defendants maintain that they are entitled to summary judgment because of the deficient expert testimony of Bigelow and Ezra. That is, without the faulty expert opinions of Bigelow and Ezra, James fails to support his allegations that the treestand's ladder was defective using any objective standard and to provide admissible evidence that the claimed defects caused his fall.

The Court denies Defendants' *Daubert* motions and motion for summary judgment. As an initial matter, Defendants do not challenge Bigelow's and Ezra's qualifications as experts as part of their *Daubert* challenge. Therefore, the Court only addresses whether Defendants' opinions are reliable and relevant.

The Court holds that Bigelow's and Ezra's opinions are based upon sufficient facts or data and that their testimony is the product of reliable principles and methods. Bigelow performed testing on the model STLS-40, including inspection and dimensional measurements of the subject treestand and materials testing of the square steel tubing compromising the ladder sections of the treestand, including tensile testing, hardness testing, and chemical analysis of the tubing alloy. Based upon this testing, Bigelow concluded that the wall thickness of the tubing

used in construction of the side rail tubes of the ladder sections were below the minimum thickness requirement listed in the Sniper's Carbon Steel Tubing Specifications of the Quality Assurance Program manual. Bigelow opined that a tube with a thinner wall thickness would have a lower bending strength than a thicker wall tube of the same material. He further concluded that the chemical composition of the tubing used in the side rails of the subject treestand did not meet the manufacturer's requirements contained in the Carbon Steel Tubing Specifications of the Quality Assurance Program manual. Specifically, Bigelow found that the carbon and manganese content were below the accepted range, which would result in the decreased strength of the carbon steel. Bigelow also was critical of Defendants' expert George Saunders's findings that the subject treestand met or exceeded industry standards and was not defective. (ECF No. 40 at 8). Defendants have questioned Bigelow's conclusions and results for determining that the treestand, specifically the steel strength, was below standard. The Court notes that Defendants (and Saunders) may disagree with Bigelow, but this disagreement is insufficient for the basis of a *Daubert* challenge. Bigelow's opinion as to the "cause" of the treestand failure is based on engineering principles for design and manufacturing. Although Bigelow's methodology and ultimate conclusions may be subject to debate, his opinions are clearly relevant and will assist the finder of fact. Undoubtedly, Bigelow is qualified by training and experience and his opinions are reliable in that they are based on principles generally accepted in the engineering community. Most importantly, Bigelow's "methodology and conclusions [will be] subject to vigorous cross examination," particularly since there are dueling experts who can both support their divergent conclusions. *Stone & Alter Real Estate Co. v. Hobart Corp.*, No. 4:01CV1582MLM, 2003 WL 25694932, at *4 (E.D. Mo. Mar. 18, 2003). Therefore, the Court denies the *Daubert* challenge to Bigelow's report and testimony.

The Court holds that Ezra's expert opinion is sufficiently reliable to preclude exclusion under *Daubert*. The Court notes that Ezra criticizes Defendants' expert, Saunders, for testing using three "equivalent" test treestands that were a mixture of diverse parts, for not performing a chemical analysis of the steel used in the test treestand, for failing to account for why the assembly of a "safety sleeve" to join each ladder rail of the Sniper STLS-40 treestand would have any effect on the treestand's resistance to buckling or its load bearing ability. (ECF No. 40 at 12-14). Ezra disagrees with Saunders on a variety of issues that would allow for liability for Defendants. Ezra finds that the exemplar testing shows that the treestand did not have a high tolerance for assembly error and/or manufacturing deviations; it is foreseeable that a user would climb up the ladder without having installed one of the primary structural components of the treestand installed; the manufacturer's instruction manual, warnings, and on-product warnings fail to instruct the user to follow all instructions and to contact the vendor with any questions; and the re-issuing of the instructions manual, copyright February 2016, is evidence that the instruction manual supplied to James in 2013 was unclear and insufficient. Ezra also disputes the opinion of Defendants' expert Lorne Smith that there was nothing wrong with the treestand's instruction manual.

The Court holds that Ezra has sufficiently supported his opinion that mis-assembly, based upon the instructions provided to James, was foreseeable. Ezra has provided ample foundation for his belief that certain modifications in the treestand (such as permanently attaching the two support bars to the treestand's fifth and tenth rungs) would have minimized the any possible mis-assembly of the treestand). Ezra's supposed lack of testing is less concerning because his report largely criticizes the purportedly improper testing done by Saunders. *See also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 834 (D. Minn. 2011) ("A number of other

district courts have held that rebuttal expert witnesses may criticize other experts' theories and calculations without offering alternatives") (denying the motion to exclude expert testimony under Rule 702). Moreover, the Court holds that Ezra's alleged failure to test his theories goes to the credibility of his testimony, not his admissibility and does not require exclusion in a case such as this. *See In re Viagra Prod. Liab. Litig.*, 572 F. Supp. 2d 1071, 1077 (D. Minn. 2008) (the general rule is that the factual basis of an expert opinion goes to the credibility of the testimony, not that admissibility). The Court believes that Ezra's opinion will aid the finder of fact and that any deficiencies in his opinion will be addressed by cross-examination of Ezra and the examination of Saunders and Smith. Therefore, the Court denies Defendants' *Daubert* motion as to Ezra as well.

In conclusion, the court finds that applying Federal Rule of Evidence 702, both Bigelow and Ezra should be allowed to testify. The court is particularly guided by the Eighth Circuit's analysis in *Lauzon v. Senco Prod., Inc.*, 270 F.3d 681, 695 (8th Cir. 2001):

> It is far better where, ... there exists a close case ... to allow the expert opinion and if the court remains unconvinced, allow the jury to pass on the evidence. Depending on the verdict, ... the trial court can always refer to Federal Rule of Civil Procedure 50(b) and grant a judgment as a matter of law or a new trial. (Footnote omitted)

*Lauzon,* 270 F.3d at 695-96; *see also Stone & Alter Real Estate Co.*, 2003 WL 25694932, at *4–5.

## II.   SUMMARY JUDGMENT

Defendants' Motion for Summary Judgment was based solely upon James's inability to prove the existence of a defect without the expert testimony of Bigelow and Ezra. *See* ECF No. 35 at 13 ("Without the testimony of these experts, plaintiff has no admissible evidence that there

was a defect in the tree stand."). Because the Court denies the *Daubert* motions with respect to Bigelow and Ezra, the Court holds that there is no basis for granting summary judgment to Defendants. Accordingly, the Court also denies Defendants' Motion for Summary Judgment.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Exclude Plaintiff's Expert for Summary Judgment (ECF No. 34) is **DENIED**.

Dated this 7th day of June, 2018.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**